**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Daniel T. Stopka, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 2:05-1728-CWH |
| ) | |
| vs. ) | |
| ) | |
| Medical University of South Carolina, ) | **ORDER** |
| ) | |
| Defendant. ) | |

On June 23, 2005, the plaintiff commenced this action pursuant to the Americans with Disability Act, 42 U.S.C. §12111, *et. seq*. On August 3, 2006, the defendant moved for summary judgment. On February 28, 2007, Magistrate Judge Robert S. Carr ("Magistrate Judge Carr") issued a report analyzing the issues and recommending that the Court grant the defendant's motion for summary judgment. On March 26, 2007, the plaintiff objected to the report and recommendation. On March 28, 2007, the defendant responded.

This matter is now before the Court for disposition. This Court is charged with making a *de novo* determination of any portions of the magistrate judge's recommendation to which specific objection is made. 28 U.S.C. § 636(b). The Court evaluates the evidence without granting any deference to the magistrate judge's findings and conclusions. Matthews v. Weber, 423 U.S. 261, 270-71 (1976); Estrada v. Witkowski, 816 F.Supp. 408, 410 (D.S.C. 1993). The final decision is made by the Court based upon the actual record, not merely the magistrate judge's reported findings. Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985). The Court may accept, reject, or modify, in whole or in part, the report and recommendation, or recommit the

matter with instructions. 28 U.S.C. §636(b)(1).

Magistrate Judge Carr recommended that summary judgment be granted to the defendant because: (1) the plaintiff is not a qualified individual with a disability because he is not competent to practice medicine without posing a risk of compromised patient care and (2) there is no causal connection between the plaintiff's request for accommodation and the plaintiff's termination. After a full review of the record and pertinent case law, the Court adopts the report and recommendation and grants summary judgment to the defendant.

I. Background

The plaintiff began medical school at Finch University of Health Sciences, Chicago Medical School in 1997. In May of 1998, the plaintiff suffered a severe closed head injury as the result of falling approximately fifteen feet down an embankment and striking his head on the concrete below. As a result of his injury, the plaintiff has difficulty with visual tasks requiring central vision and encounters a blind spot when reading from left to right. The plaintiff's visual problems have resulted in an acquired dyslexia. As a result, the plaintiff reads about four to five times slower than the average person.

Despite the plaintiff's injury, he returned to medical school within a year, beginning with one class at a time and adding more classes to his schedule over time. The medical school accommodated the plaintiff by allowing him to carry a reduced class and clinical load and giving him extra time for course work and testing. The plaintiff took his Physician Licensing Examinations twice and passed them the second time. In 2003, the plaintiff graduated from medical school.

The plaintiff interviewed for a residency position with the Medical University of South

Carolina ("MUSC").  The plaintiff informed MUSC of his accident and accommodations in medical school.  On May 20, 2003, the plaintiff signed a contract of employment prepared by MUSC.  In July 2003, the plaintiff began the General Pediatric Residency Program at MUSC without accommodation.

Because of the plaintiff's reduced clinical requirements in medical school, he was not as experienced as others who began the residency program with him.  During July of 2003, the plaintiff completed his first rotation in the Neonatal Intensive Care Unit.  The evaluation of his performance was marginal.  In August of 2003, the plaintiff completed his rotation in the Emergency Room.  The evaluation of his performance was marginal.  In September of 2003, the plaintiff began rotations in Ward III Hematology and Oncology.  One evaluation of his performance was marginal; a second evaluation of his performance was unsatisfactory.[1]

Due to the plaintiff's reading problems, MUSC accommodated him in August of 2003 with a reduced patient load and increased supervision.  The plaintiff worked very slowly.  Other residents saw a patient in fifteen minutes on average.  However, the plaintiff spent an average of forty-five to fifty minutes on each patient.  The plaintiff repeatedly requested a handheld scanning device that would read aloud written texts and reduce his necessary reading time.  However, most of the notes that residents at MUSC are required to read are handwritten by different people.  MUSC investigated a scanning device but concluded that a handheld scanning device is most useful for typed text and is not useful for reading different people's handwriting.

---

[1] When a resident's performance is evaluated at MUSC, a resident receives one of four ratings.  From highest to lowest they are: outstanding, satisfactory, marginal, and unsatisfactory. MUSC's policy provides for dismissal for "failure of the resident to maintain satisfactory levels of academic and clinical performance as determined through periodic evaluations."

In October of 2003, the plaintiff began a rotation in the general pediatric ward. MUSC accommodated the plaintiff by further reducing his patient load to two or three patients per shift. A resident at MUSC is normally responsible for ten to fifteen patients. In addition, MUSC increased supervision over the plaintiff and assigned senior resident Dr. Lipscomb to monitor the plaintiff. Dr. Lipscomb supervised all but one of the plaintiff's eighty calls in the general pediatric ward. Despite the reduced patient load and increased supervision, the plaintiff's performance deteriorated. Dr. Lipscomb concluded that the plaintiff was unable to remember basic medial knowledge from medical school, that he could not retain information or make decisions, and that he did not recognize his inabilities. Faculty members noted that the plaintiff was unable to remember newly acquired information from one day to the next and was unable to answer medical questions that a fourth year medical student should know.

In October of 2003, the plaintiff's performance was on the cusp of marginal and unsatisfactory. In a meeting, the Resident Curriculum Committee discussed faculty and attending physicians' concerns regarding the plaintiff's short-term memory. As a result of the meeting, MUSC directed the plaintiff to Dr. Teichner, a licensed clinical psychologist, for a nueropsychological evaluation. On October 3, 2003, Dr. Teichner tested the plaintiff and found that the plaintiff reads four to five times more slowly than the average person and that the plaintiff is unable to make quick decisions based on the synthesis of complex information or a large amount of information.

In November of 2003, the plaintiff was permitted to take administrative leave for a two week period to allow him to prepare an application for a Physical Medicine and Rehabilitation Residency Program in Chicago. When the plaintiff returned from leave, MUSC placed the

plaintiff in a remedial program as a fourth year medical student. For the first two weeks of December of 2003, the plaintiff was assigned to work with Dr. Clyburn in internal medicine. However, the plaintiff's performance deteriorated even further. Dr. Clyburn concluded that the plaintiff functioned on the level of a third year medical student. The plaintiff returned from his Christmas holiday on January 20, 2004. MUSC dismissed the plaintiff on January 28, 2004.

II. Summary Judgment Standard

When a party has moved for summary judgment, the judgment sought shall be rendered forthwith if "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986). An issue of such material fact is "genuine" if the evidence so offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

III. Plaintiff's Objections

The plaintiff admits that he reads more slowly than other residents, that he spent more time with patients than other residents spent, that he has difficulty recognizing his disabilities,

and that when he becomes overloaded with information, he shuts down and has difficulty processing information. Pl.'s Resp. in Objection to Def.'s Mot. for Summ. J. 8; Pl.'s Objections to Report and Recommendation 4-5. The plaintiff admits that he was permitted to spend extra time with patients and that he was placed on a remedial program. Pl.'s Objections to Report and Recommendation 4-5, Compl. ¶13. The plaintiff claims that he is disabled and that MUSC violated the ADA when it failed to accommodate him. The plaintiff's objections to Magistrate Judge Carr's report and recommendation are as follows: 1) the plaintiff is a qualified individual with a disability; 2) a reasonable accommodation would have enabled the plaintiff to provide competent patient care; 3) MUSC retaliated against the plaintiff when he requested accommodations for his disabilities; 4) MUSC breached its contract with the plaintiff when it terminated the plaintiff.

     A. Qualified Individual with a Disability

The plaintiff claims that he is a qualified individual with a disability, able to provide competent patient care. Under the ADA, a disabled person is qualified if he satisfies the requisite skill, experience, education, and other job-related requirements and can perform the essential functions of the employment position with or without reasonable accommodation. 42 U.S.C. §12111(8). The plaintiff is not a qualified individual with a disability because he lacks the requisite skill to care for patients and because he cannot perform the essential function of caring for patients.

The plaintiff argues that no resident possesses all of the necessary skills because the purpose of the residency is to gain skills and education. According to the plaintiff, because he passed his first rotation, he was actually performing the essential functions of the job. However,

the plaintiff's argument is unavailing because there is no reasonable inference that the plaintiff was able to provide competent patient care despite MUSC's accommodations. MUSC reduced the plaintiff's patient load from ten to fifteen patients to two to three patients per shift and allowed him to spend forty-five minutes on each patient instead of fifteen minutes on each patient. In addition, MUSC allowed him to work as a fourth year medical student and assigned a senior resident to supervise all of his work. Despite these accommodations, the plaintiff was unable to remember basic medical knowledge from medical school, to retain information, or to make decisions on the basis of complex material. Because there is no reasonable inference that the plaintiff can perform the work of a resident, he is not a qualified person with a disability under the ADA. Because the plaintiff is not a qualified person with a disability under the ADA, MUSC was not required to provide him an accommodation.

      B. Reasonable Accommodation

The plaintiff argues that a reasonable accommodation would have enabled him to provide competent patient care. The Americans with Disabilities Act ("ADA") prohibits employers from discriminating against a qualified individual on the basis of that individual's disability. 42 U.S.C. §§12111, 12112. The ADA requires employers to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the employer's business. 42 U.S.C. §12112.

The plaintiff argues that MUSC should have provided him with a handheld scanning device that would have read aloud written texts and reduced his necessary reading time. However, this accommodations is not reasonable because it would not have significantly reduced

the plaintiff's reading time. Residents at MUSC are required to read a lot of information on patients' charts. Much of this information is handwritten by different people. The defendant has shown that it investigated a handheld scanning device but that such devices are best utilized on typed text and that handwriting recognition technology is not useful for reading different people's handwriting. The plaintiff has not addressed whether any handheld device can read material that is handwritten by different people. Therefore, the plaintiff's mere allegation that a handheld device would have enabled him to provide competent care is insufficient. Instead, the plaintiff must show that there is a genuine issue of material fact for trial. Fed. R. Civ. P. 56. He has failed to do so.

    C.  Retaliation

The plaintiff claims that MUSC retaliated against him when he requested accommodations for his disabilities. In order to recover for retaliation under the ADA, a plaintiff must demonstrate: (1) that he engaged in a protected activity; (2) that he suffered an adverse action subsequent to engaging in the protected activity; and (3) that there was a causal connection between the protected activity and the adverse action. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002). The plaintiff engaged in a protected activity when he requested accommodations for his disabilities. Haulbrook v. Michelin N. Amer., 252 F.3d 696, 706 (4th Cir. 2001). The plaintiff claims that MUSC retaliated against him when he requested accommodations by firing him. However, there is no reasonable inference of any causal connection between the plaintiff's requests for accommodation and his termination. Instead, MUSC accommodated the plaintiff in response to the plaintiff's requests. MUSC reduced the plaintiff's patient load, allowed him to spend extra time on each patient, and later

implemented a remedial program so that the plaintiff could work as a fourth year medical student under close supervision. Despite these accommodations, the plaintiff was unable to perform the work of a resident. As a result of the plaintiff's deficient performance, the plaintiff was terminated. There is no causal connection between the plaintiff's requests for accommodation and his termination.

  D. Breach of Contract

The plaintiff claims that MUSC breached its contractual duty to teach the plaintiff how to perform his job. This argument is without merit. There is no reasonable inference that MUSC failed to teach the plaintiff how to perform the duties of a resident. Instead, when MUSC evaluated the plaintiff's difficulties, MUSC reduced the plaintiff's patient load, allowed him to spend extra time on each patient, and later implemented a remedial program so that the plaintiff could work as a fourth year medical student under close supervision. Despite these accommodations, the plaintiff was unable to perform the work of a resident. As a result, MUSC terminated the plaintiff.

The plaintiff argues that his termination was not in accordance with MUSC's written policies. MUSC's written policies allow it to dismiss a resident for failure to maintain satisfactory levels of academic and clinical performance as determined through periodic evaluations. The plaintiff's clinical performance was evaluated from July 2003 until his dismissal in January 2004. Evaluations showed that his performance was marginal or unsatisfactory and that his performance deteriorated over time. The plaintiff's dismissal was in accordance with MUSC's written policies. Because MUSC followed its written policies, it did not breach its contract with the plaintiff.

No genuine issue of material fact exists in this case. Therefore, the defendant is granted summary judgment.

**AND IT IS SO ORDERED.**

_____
**C. WESTON HOUCK
UNITED STATES DISTRICT JUDGE**

July 11, 2007
Charleston, South Carolina